UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

v.                                                                                          8:16-CR-235(BKS)

KEITH ERIC JERGENSEN and
DEBASHIS GHOSH,

              **Defendants.**
_____

**APPEARANCES:**

For Defendant Jergensen:
Lisa A. Peebles
Federal Public Defender
Clinton Exchange, Third Floor
4 Clinton Street
Syracuse, NY 13202

For Defendant Ghosh:
John B. Casey
Dreyer Boyajian LLP
75 Columbia Street
Albany, NY 12210

For United States of America:
Richard S. Hartunian
United States Attorney
Michael S. Barnett
Assistant United States Attorney
445 Broadway, Room 218
Albany, NY 12207

**Hon. Brenda K. Sannes, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.  INTRODUCTION**

Defendants Keith Eric Jergensen and Debashis Ghosh are charged with conspiracy to commit wire fraud, in violation of 18 U.S.C. §§ 1343, 1349.  (Dkt. No. 1).  Presently before the Court is Defendant Jergensen's motion to dismiss the Indictment, (Dkt. No. 28), which Defendant Ghosh has joined in all respects.  (Dkt. No. 29).  The Government opposes the motion.  (Dkt. No. 31).  Defendant's motion is denied, for the reasons that follow.

**II.  BACKGROUND**

According to the Indictment, Defendants were both members and co-chief executive officers of a Delaware company called Verdant Capital Group, LLC ("Verdant").  (Dkt. No. 1, ¶ 1).  In late 2010, Verdant was retained by "Company A" to raise money for the construction of an airplane maintenance, repair, and overhaul facility in Plattsburgh, New York.  (*Id.*, ¶¶ 3-4).  In response to a request from Defendants, Company A agreed to transfer $2.5 million to a bank account that would be in the names of both Verdant and Company A.  (*Id.*, ¶ 4).  On or about November 15, 2010, Defendants opened an account (the "2296 Account") at Wells Fargo Bank in the names of Verdant and Company A, but Jergensen and Ghosh were the only signatories on the account until on or about May 4, 2011.  (*Id.*, ¶ 5).  On or about November 30, 2010, Company A and Verdant entered into a "Memorandum of Understanding," stating that the account would have signatories from both Verdant and Company A; that authorization from the signatories for both Verdant and Company A would be required for any use of the money in the

2

account; that Company A would deposit approximately $2.5 million into the account; and that the money would remain in the account for one year. (*Id.*, ¶ 6).

On or about December 2, 2010, Company A and Verdant entered into an agreement referred to as the "November 2010 Agreement," stating that Company A and its corporate affiliate would deposit $2.5 million into an account in the name of Company A and Verdant; that the money would remain in the account for one year; and that the money would then be returned to Company A so that it could be used to finance costs associated with the airplane facility. (*Id.*, ¶ 7). On or about December 3, 2010, Company A and Verdant entered into an "Equity Account Agreement" identifying the 2296 Account as the account that would receive the money and requiring Verdant to provide Company A with statements demonstrating the account balance on at least a monthly basis. (*Id.*, ¶ 8). On December 3, 2010, Company A transferred $2.5 million by wire into the 2296 Account. (*Id.*, ¶ 11).

Meanwhile, Verdant maintained another account at Wells Fargo, with only Jergensen and Ghosh as authorized signatories (the "0285 Account"). (*Id.*, ¶ 2). Between December 8, 2010 and March 18, 2011, Defendants transferred all of the $2.5 million from the 2296 Account over to the 0285 Account, without providing any notice to Company A. (*Id.*, ¶ 12). Defendants then used the money to pay various expenses unrelated to Company A. (*Id.*). From December 2010 to July 2012, Defendants failed to provide Company A with monthly statements for the 2296 Account. (*Id.*, ¶ 13). On or about March 23, 2011, Wells Fargo gave the monthly statements for the 2296 Account directly to Company A, and Company A learned that the $2.5 million had been transferred out of the account. (*Id.*, ¶ 14).

On March 25, 2011, Company A's Chairman sent an email to Jergensen, with a copy to Ghosh, asking where the $2.5 million had gone, and on the same day, Jergensen responded by email, with a copy to Ghosh, stating that Company A's $2.5 million was in a "security account" at Wells Fargo controlled by "the Lender." (*Id.*, ¶ 15). The Indictment charges that this representation was false "because they had actually transferred the money to the 0285 Account and then spent the money." (*Id.*). On September 30, 2011, Jergensen emailed Company A's President and CEO a letter that he and Ghosh had written, which stated that the $2.5 million was "moved over a period of time, as requested by the Lender, out of [the 2296 Account] into a separate, secured account at Wells Fargo NA under management of the Lender." (*Id.*, ¶ 16). The Indictment charges that this representation was false because, by that time, the Defendants had already transferred the money to the 0285 Account and spent it. (*Id.*).

On January 14, 2013, Jergensen emailed Company A's President and CEO a "Memorandum of Understanding" between Verdant and "the Lender" dated December 20, 2010; the Memorandum of Understanding stated that Verdant could transfer Company A's $2.5 million to the Lender's "secured account at Wells Fargo Bank." (*Id.*, ¶ 17). The Indictment charges that this representation was also false because, by that time, the Defendants had already transferred the money to the 0285 Account and spent it. (*Id.*).

The Indictment further charges that:

From in or about November 2010 through in or about August 2014, in Clinton and Onondaga Counties in the Northern District of New York, and elsewhere, the defendants, KEITH ERIC JERGENSEN and DEBASHIS GHOSH, conspired to commit wire fraud, in violation of Title 18, United States Code, Section 1343, by devising and intending to devise a scheme and artifice to defraud Company A of $2.5 million, by misappropriating and diverting this money, and by misrepresenting, concealing, disguising, and failing to disclose material information to Company A about the location, safekeeping and use of the money,

and for obtaining money and property by means of materially false and fraudulent pretenses, representations, promises, and material omissions, and for the purpose of executing such scheme and artifice and attempting so to do, transmitting and causing to be transmitted by means of wire communications in interstate commerce writings, signs and signals, all in violation of Title 18, United States Code, Section 1349.

(*Id.*, ¶ 9). The Indictment charges that "the purpose of the conspiracy was to steal Company A's $2.5 million and then conceal the theft from Company A." (*Id.*, ¶ 10).

### III.   DISCUSSION

Defendants move to dismiss the Indictment on two grounds: 1) it fails to state an offense; and 2) prosecution is barred by the statute of limitations.

#### A.   Failure to State an Offense

Defendants argue that the Indictment "fails to allege a conspiracy and it fails to allege an essential element of the substantive offense." (Dkt. No. 28-1, p. 7). Under Rule 7(c)(1) of the Federal Rules of Criminal Procedure, the indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). As the Second Circuit has explained, "[a]n indictment is sufficient when it charges a crime with sufficient precision to inform the defendant of the charges he must meet and with enough detail that he may plead double jeopardy in a future prosecution based on the same set of events." *United States v. Vilar*, 729 F.3d 62, 80 (2d Cir. 2013) (quoting *United States v. Yannotti*, 541 F.3d 112, 127 (2d Cir. 2008)). "Moreover, an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *Id.*; *see also Hamling v. United States*, 418 U.S. 87, 117 (1974).

5

In considering a motion to dismiss, the court will "examine the indictment as a whole, accept as true the facts alleged, and determine only whether the indictment is valid on its face." *United States v. Elliott*, 363 F. Supp. 2d 439, 450 (N.D.N.Y. 2005).

The substantive offense of wire fraud is defined as follows:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1343.  Therefore, the essential elements of a wire fraud violation are: 1) "a scheme to defraud"; 2) "money or property as the object of the scheme"; and 3) "use of the wires to further the scheme."  *United States v. Shellef*, 507 F.3d 82, 107 (2d Cir. 2007) (citation omitted).  Defendants have been charged with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, which states that any person conspiring to commit a relevant offense is "subject to the same penalties as those prescribed for the offense."  18 U.S.C. § 1349.  "To prove conspiracy, the government must show that the defendant agreed with another to commit the offense; [and] that he knowingly engaged in the conspiracy with the specific intent to commit the offenses that were the objects of the conspiracy."  *See United States v. Mahaffy*, 693 F.3d 113, 123 (2d Cir. 2012) (quoting *United States v. Monaco*, 194 F.3d 381, 386 (2d Cir. 1999)).  The agreement need not be explicit, but rather "can be established by showing the parties have a tacit understanding to carry out the prohibited conduct."  *United States v. Svoboda*, 347 F.3d 471, 477 (2d Cir. 2003) (internal quotations and citation omitted).  Proof of an overt act is not required for a conspiracy conviction under § 1349.  *United States v. Roy*, 783 F.3d 418, 419 (2d Cir. 2015).

First, Defendants contend that the Indictment fails to sufficiently allege two elements of wire fraud, specifically: 1) false or fraudulent representations, claims, or documents made by Jergensen in order to defraud Company A; and 2) acts on the part of Jergensen showing that he acted with the specific intent to defraud Company A.  (Dkt. No. 28-1, p. 8).  However, the Indictment alleges several false or fraudulent representations, claims, or documents made by Defendants which show their intent to defraud Company A, namely the agreements used to induce Company A to put $2.5 million in the 2296 Account, and then after Defendants had spent the money, assurances to Company A that the money was safe in the 0285 Account.  (Dkt. No. 1, ¶¶ 6-8, 15-17).  Second, Defendants argue that, as to the charged conspiracy, the Indictment fails to sufficiently allege "an agreement between Jergensen and Ghosh to commit an unlawful act." (Dkt. No. 28-1, p. 7).  But the Indictment sufficiently alleges at least an implicit agreement between Jergensen and Ghosh, in that they worked to defraud Company A, with the purpose of the conspiracy being to "steal Company A's $2.5 million and then conceal the theft from Company A."  (Dkt. No. 1, ¶ 10).

In sum, the allegations in the Indictment sufficiently track the statute and describe and detail the essential elements of the alleged crime to give the Defendants fair notice and warning.[1] Accordingly, the motion to dismiss the Indictment for failure to state a claim must be denied. *See United States v. Bunn*, 154 F. App'x 227, 229 (2d Cir. 2005) ("Here, the Indictment clearly contained the elements of the offense charged, fairly informed Appellant of the charge against him, and enabled Appellant to plead an acquittal or conviction in bar of future prosecutions for

---

[1] This case is thus distinguishable from *United States v. Pirro*, where the Second Circuit found that the Indictment failed to sufficiently allege an essential element of the charged violation of 26 U.S.C. § 7206, "namely a material falsehood or an omission that amounted to a material falsehood."  212 F.3d 86, 93 (2d Cir. 2000).

the same offense."); *United States v. Mermelstein*, 487 F. Supp. 2d 242, 251 (E.D.N.Y. 2007) (finding conspiracy charge "sufficiently specific"); *United States v. Howard*, 400 F. Supp. 2d 457, 476 (N.D.N.Y. 2005) ("the superseding indictment sufficiently alleges a conspiratorial agreement as well as notice of [the defendant's] alleged role"); *Elliott*, 363 F. Supp. 2d at 450 (denying motion to dismiss indictment where it "recites the approximate time and location of the conspiracy, specifies the object of the conspiracy, alleges an illicit agreement between the defendant and others, and cites the underlying statutory authority").

### B. Statute of Limitations

Defendants next argue that the Government's case is barred by the applicable five-year statute of limitations because "the alleged offense had been completed on or about March 25, 2011, and Company A knew on or about April 29, 2011, that the money had been taken was not going to be returned," more than five years before the Indictment. (Dkt. No. 28-1, pp. 12-13). Defendants assert that "any alleged acts of concealment by Jergensen and Ghosh, regarding the location of the $2.5 million, after March 25, 2011, were not done in furtherance of the *main* criminal objectives of the alleged conspiracy." (*Id.*, p. 16). In response, the Government argues that "the conspiracy did not end with the theft of the $2.5 million," but rather that the objective of the conspiracy was also to conceal the theft. (Dkt. No. 31, p. 10). The Government further elaborates that "[a]n object of the conspiracy from its outset was to conceal and lie about the theft, in order to assure Company A that nothing was the matter, and to prevent Company A from discovering the fraud, reporting the fraud to the authorities, and abandoning Verdant as a partner for the Facility." (*Id.*).

According to 18 U.S.C. § 3282(a), "[e]xcept as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3282(a). As stated above, a conviction for conspiracy to commit wire fraud does not require proof of an overt act in furtherance of the conspiracy. *Roy*, 783 F.3d at 418. For conspiracy statutes that do not require proof of an overt act, such as 18 U.S.C. § 1349, "the indictment satisfies the requirements of the statute of limitations if the conspiracy is alleged to have continued into the limitations period." *United States v. Fishman*, 645 F.3d 1175, 1191 (10th Cir. 2011) (citing *United States v. McNair*, 605 F.3d 1152, 1213 (11th Cir. 2010)); *see also United States v. Grammatikos*, 633 F.2d 1013, 1023 (2d Cir. 1980) ("For limitations purposes, the conspiracy may be deemed terminated when, in a broad sense, its objectives have either been accomplished or abandoned, not when its last overt act was committed.") (distinguishing the general conspiracy statute, 18 U.S.C. § 371); *United States v. Huff*, S2 12 CR 750 NRB, 2015 WL 463770, at *2, 2015 U.S. Dist. LEXIS 13355, at *6 (S.D.N.Y. Feb. 4, 2015) ("We reject defendant's contention that the Superseding Indictment [charging conspiracy under § 1349] is facially untimely because it fails to charge an overt act within the limitation period.").

Applying these principles here, the Indictment satisfies the requirements of the five-year statute of limitations because the charged § 1349 conspiracy is alleged to have continued into the limitations period, i.e. after July 28, 2011. (Dkt. No. 1). The Indictment alleges that the purpose of the conspiracy was to "steal Company A's $2.5 million *and then conceal* the theft from Company A." (*Id.*, ¶ 10) (emphasis added). The Indictment alleges two actions to conceal the theft after July 28, 2011, namely Defendant Jergensen's communications on September 30, 2011

9

and January 14, 2013, which assured Company A that the $2.5 million it had wired to the 2296 Account was safe in the 0285 Account. (*Id.*, ¶¶ 16-17). Ultimately, Defendants' arguments are premature, as the precise scope of the conspiratorial agreement, its main objective(s), and when it ended are factual issues which a jury must resolve.

Accordingly, at this juncture, the Court denies the motion to dismiss the Indictment based on the statute of limitations.[2] *See United States v. Levine*, 16 CR. 715 (JSR), 2017 WL 1293621, at *5, 2017 U.S. Dist. LEXIS 54071, at *13 (S.D.N.Y. Apr. 7, 2017) (rejecting statute of limitations argument on motion to dismiss indictment where "the Indictment's allegations of a conspiracy continuing into the relevant limitations period suffice at this stage"); *United States v. Kozeny*, 493 F. Supp. 2d 693, 715 (S.D.N.Y. 2007) ("Whether the conspiratorial agreement was in fact as broad as the Indictment alleges, whether each defendant in fact subscribed to that agreement, and if and when the conspiracy ended are issues for the jury and cannot be decided at this stage."), *aff'd*, 541 F.3d 166 (2d Cir. 2008); *United States v. Carnesi*, 461 F. Supp. 2d 97, 98–99 (E.D.N.Y. 2006) (denying motion to dismiss facially valid indictment that alleged conspiracy continued during the statute of limitations period); *United States v. Benussi*, 216 F. Supp. 2d 299, 311 (S.D.N.Y. 2002) ("The precise scope of the conspiratorial agreement [is] an issue for the jury."), *aff'd sub nom*, *United States v. Salmonese*, 352 F.3d 608 (2d Cir. 2003);

---

[2] In support of the argument that the alleged conspiracy ended more than five years before the Indictment, Defendant Jergensen has submitted the Grand Jury testimony of two government witnesses, as well as a document not referred to in the Indictment, which indicates that Jergensen and Ghosh signed a personal and corporate guarantee to return the $2.5 million by April 29, 2011. (*See* Exhibits A, D, E to Dkt. No. 28) (filed under seal as per Dkt. No. 30). At this stage, however, the Court has only considered the Indictment in deciding the motion to dismiss. *See generally United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) ("To the extent that the district court looked beyond the face of the indictment and drew inferences as to the proof that would be introduced by the government at trial . . . , we hold that, in the circumstances presented, such an inquiry into the sufficiency of the evidence was premature . . . . [T]he sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment.").

*accord Grunewald*, 353 U.S. at 399 (ordering a new trial so that the jury could determine the scope of the conspiracy).

## IV.   CONCLUSION

For these reasons, it is

**ORDERED** that Defendant's motion to dismiss the Indictment (Dkt. No. 28) is **DENIED**.

**IT IS SO ORDERED.**

June 14, 2017
Syracuse, New York

Brenda K. Sannes
U.S. District Judge